IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00385-WYD-MEH

CHARLOTTE BISHELLI,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, and
CYNTHIA LIPSCOMBE,

    Defendants.

___

**ORDER ON MOTION TO COMPEL DISCOVERY**
___

Plaintiff has filed a motion to compel certain information and documents from Defendant State Farm [Docket #38]. The matter is fully briefed and has been referred to this Court [Docket #39]. Oral argument would not materially assist the Court in adjudicating this motion. As set forth below, the Court **grants in part** and **denies in part** the Motion to Compel.

**I.    FACTS**

Plaintiff purchased an automobile insurance policy from Defendant State Farm. Defendant Lipscombe is alleged to have caused an accident that injured Plaintiff. Plaintiff alleges that the money recovered from Lipscombe is insufficient to compensate for her damages and made a demand on State Farm under her coverage for underinsured motorist benefits (UIM). State Farm made an offer of settlement that Plaintiff considered inadequate, and she brought this lawsuit.

The current motion relates to the following categories of documents and information sought by Plaintiff:

1. The complete insurance claim file;
2. The injury evaluation report for Plaintiff's claim;
3. The level of reserves set aside for Plaintiff's claim;
4. More satisfactory responses to Interrogatory Nos. 8-14;
5. More satisfactory responses to Requests for Production Nos. 2, 3, 5, 6, 9-14, and 16.

As a preliminary matter, Defendant alleges that Plaintiff failed to confer as to items (4) and (5), a point that Plaintiff concedes, although Plaintiff states that Defendant's position on producing this type of information was clear and unwavering. The Court agrees with the frustration expressed by Defendant and admonishes Plaintiff's counsel that, in the future, the failure to specifically confer regarding a motion to compel will result in denial of the motion outright. Nevertheless, the Court will adjudicate the requests made by Plaintiff.

## II. DISCUSSION

### 1. Claim File

Defendant contends that these documents, and others, are protected from disclosure by the work product doctrine. Federal law governs such an issue. *Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998). Here, the Court sees two principles to examine in determining whether to require production of the requested documents. The first principle deals with whether the work product doctrine would apply at all. On one hand, at some point an insurance company's activity shifts from claims evaluation to anticipation of litigation. Generally, this is the point at which assertion of the work product doctrine is tenable, given that the probability of litigating the claim is substantial and perhaps imminent. Even when applicable, however, the work product doctrine is not an absolute shield from disclosure. If the requesting party can meet the substantial need/undue hardship test, then the material is discoverable. *Id.* at 704. Here, the undue hardship element is met, as it is quite apparent that the sought-after information is not available elsewhere.

2

The second principle (as long as the work product claim is colorable) is whether, in the context of an insurance bad faith case, Plaintiff can establish a substantial need for the material. The case for discoverability is much stronger when a bad faith claim is alleged and when the parties involved in the lawsuit are insured and insurer. "[A]llowing a plaintiff to overcome an insurer's work product privilege may be particularly appropriate in an action for bad faith, in light of the insurer's virtual monopoly over the evidence required to support such an action." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996).

> "In a bad faith insurance claim settlement case, the 'strategy, mental impressions and opinion of [the insurer's] agents considering the handling of the claim are directly at issue,' " and thus it is clear that "[u]nless the information is available elsewhere, a plaintiff may be able to establish a compelling need for evidence in the insurer's claim file regarding the insurer's opinion of the viability and value of the claim."

*Id.* (citations omitted).

The accident underlying this lawsuit occurred on July 7, 2003. On June 7, 2006, counsel for Plaintiff sent a letter to State Farm threatening in clear terms to sue State Farm in Larimer County, Colorado, even arguing that when such a suit was filed, counsel was confident that a jury in such county would award Plaintiff "the full measure of damages permissible under law." From that point forward, Defendant makes a solid case that the work product doctrine should apply, as the threat of litigation was substantial and perhaps imminent. Thus, the Court believes that the work product doctrine applies to any documents in the claims file that postdate June 7, 2006. Any documents that predate this letter must be produced.

As to Plaintiff's substantial need for the documents covered by the work product doctrine in the context of a bad faith claim, the Court believes it is incumbent upon the Plaintiff to allege a colorable claim of bad faith. In *Logan*, the district court required the insurance company to submit

the documents for an *in camera* review to allow the Court to determine whether the documents show the *possibility* that they contain evidence of bad faith. The Court agrees with such a procedure and will require the claims file to be submitted for such a review. This review is particularly important to product the integrity of the work product doctrine.

**2.     Injury Evaluation Report**

As for any documents in the injury evaluation report which postdate Plaintiff's counsel's letter, the Court will order the same procedure as for the claims file.

**3.     Loss Reserves**

Courts allowing discovery on loss reserves have based their reasoning in part on the duty owed to an insured by the insurance company that is the subject of the bad faith claim. *Silva v. Basin Western, Inc.*, 47 P.3d 1184 (Colo. 2002) (citing cases). In fact, the Supreme Court of Colorado has noted that loss reserves are more likely to be relevant in a first-party insurance claim than in a third-party claim. *Id.* at 1193. "In a first-party claim, the insurance company owes a duty to its insured to adjust a claim in good faith . . . . The establishment of reserves and settlement authority could be relevant and reasonably calculated to lead to admissible evidence regarding whether the insurance company adjusted a claim in good faith or made a prompt investigation, assessment, or settlement of a claim." *Id.* Nonetheless, loss reserves are not sufficient to alone determine whether the insurance company acted in bad faith. The Tenth Circuit has concluded, "We are also unwilling to infer that 'settlement authority invariably constitutes a final, objective assessment of a claim's worth to which an insurer may be held on penalty of bad faith.'" *Signature Dev. Cos. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1223-24 (10th Cir. 2000).

Here, the only manner in which the loss reserves appear to assist the Plaintiff is in assessing

4

how State Farm valued the claim. Although the Tenth Circuit expressly rejected the use of loss reserves as sufficient evidence to establish bad faith, the Court did not conclude that loss reserves can never be relevant. This Court believes that whether the loss reserves are ultimately relevant to the issue of bad faith should be left to the district judge to determine prior to or at trial. Thus, the Court concludes that Defendant should produce its level of reserves set aside for this incident.

**4.     Interrogatory Nos. 8-14**

   a.     Interrogatory No. 8

Viewed in the abstract, since the Court does not have the benefit of looking through the documents to which State Farm directed the Plaintiff, the Court believes that Defendant's response is not sufficient. Just because a name appears in a stack of documents does not mean that the person actually worked on the claim, nor do such documents necessarily contain the names of all persons who worked on the claim, as there may well be others who worked on it and whose names did not find their way into the documents. Defendant should answer this question.

   b.     Interrogatory No. 9

With regard to this question seeking information concerning the methods and criteria for setting reserves, information which Plaintiff seeks in support of her state law bad faith claim, the Court is guided by the analysis of the Colorado Supreme Court in *Silva*, 47 P.3d at 1193, as discussed above. This interrogatory should be answered substantively.

   c.     Interrogatory No. 10

This request seeks the rationale behind State Farm's opening offer to settle the claim for $2,000.00. The Court does not believe that settlement negotiations are relevant and will deny this request.

5

d. <u>Interrogatory No. 11</u>

For the same reason given by the Court with regard to Interrogatory No. 8, Defendant should provide a substantive answer to the request seeking information concerning persons who worked on examining the reasonableness and necessity of any medical or rehabilitation claims submitted by Plaintiff.

e. <u>Interrogatory No. 12</u>

For the same reason given by the Court with regard to Interrogatory Nos. 8 and 11, Defendant should provide a substantive answer to this request.

f. <u>Interrogatory No. 13</u>

The Court agrees with Defendant's position that a request seeking "all documents available to adjusters . . . which give guidance *or any information that may be used* in connection with handling UM/UIM, PIP and no-fault claims" is legally overbroad and vague and will deny the request.

g. <u>Interrogatory No. 14</u>

The Court believes that this interrogatory, seeking "training or instructional materials . . . concerning the handling of UIM and PIP files in Colorado" is sufficiently more focused than Interrogatory No. 13 as to require a response. As for the argument that the information is proprietary, this can be addressed by an appropriate protective order.

**5.    Requests for Production Nos. 2-3, 5-6, 9-14, and 16**

a. <u>Request No. 2</u>

State Farm represents that the only responsive documents withheld from production in request to this request were the 24 pages for which privilege was claimed. State Farm should submit this *in camera* together with the documents described above, for the Court to determine the applicability of

the privilege.

      b.      <u>Request No. 3</u>

Defendant represents that any documents responsive to this request overlap with Request No. 2, which the Court will accept.

      c.      <u>Request No. 5</u>

This request sought all complaints filed with the State of Colorado concerning State Farm. Defendant contends that the documents are as available to Plaintiff as to Defendant. In her reply, Plaintiff does not dispute this allegation. Therefore, the Motion will be denied as to this request.

      d.      <u>Request No. 6</u>

Plaintiff seeks manuals relating to the handling of PIP or UIM claims. The request as phrased includes elements that make it overbroad. The Court will require production of any policy or training manual in effect at State Farm that would govern the handling of PIP or UIM claims at the time relevant to this case, and will grant the motion to compel to that extent only. Again, any proprietary information can be governed by an appropriate protective order.

      e.      <u>Request No. 9</u>

In this request Plaintiff sought a hopelessly overbroad description of documents and, for that reason, the Court denies the Motion as to this request.

      f.      <u>Request No. 10</u>

This request sought documents "addressing goals, training or meetings for claims adjusters." Again, the Court agrees with Defendant that it is overbroad and vague and will deny the request.

      g.      <u>Request No. 11</u>

Plaintiff seeks the evaluation form for Plaintiff's PIP or UIM claims. For the same reason as

stated earlier in this Order, Defendant should produce any responsive document(s) *in camera*, appropriately labeled as being tied to Request for Production No. 11 (as should all such documents produced to the Court).

h.  Request No. 12

Plaintiff sought the insurance bureau index reports concerning Plaintiff, and Defendant produced them, so the Motion is denied as moot in this regard.

i.  Request No. 13

Defendant argues that this request duplicates Request No. 6, and the Court agrees. The Court's Order in connection with Request No. 6 will govern this request also.

j.  Request No. 14

Defendant objects to the production of an employee's personnel file on several good faith bases. In response, Plaintiff merely states that "the adjuster's personnel file . . . is discoverable." This does not adequately address Defendant's objections, and the Motion will be denied as to Request No. 14. Moreover, the cases that the Court has reviewed would counsel against requiring production here, *e.g.*, *Allstate Ins. Cos. v. Herron*, 393 F. Supp.2d 948, 957-58 (D. Alaska 2005); *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 815 (Ky. 2004), except where, perhaps, the file actually contains information that the adjuster engaged in bad faith conduct either with regard to Plaintiff's file or prior files. The Court will deny the Motion except to the extent that the personnel file at issue actually contains such information. If it does, the relevant documents should be submitted in connection with an appropriate protective order.

k.  Request No. 16

This request sought all computerized information relevant to Plaintiff's claim. Defendant

represents that all such information has been addressed in one of the other requests. Therefore, the Motion is denied as to this request.

**III.    CONCLUSION**

Accordingly, for the reasons stated above, it is hereby ORDERED that Plaintiff's Motion to Compel Discovery [filed Dec. 14, 2007; Docket #38] is **granted in part** and **denied in part** as specified herein. Defendant shall produce the documents ordered to be produced to Plaintiff on or before February 11, 2008. All documents ordered to be submitted for *in camera* review shall be submitted in hard copy directly to Chambers no later than February 11, 2008, with an appropriate label for each request.

Dated at Denver, Colorado, this 31st day of January, 2008.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge